*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-0813**


Theodore Lee Wicken, petitioner,
Appellant,

vs.

State of Minnesota,
Respondent.


**Filed April 11, 2016
Affirmed
Halbrooks, Judge**


Hennepin County District Court
File No. 27-CR-13-8114

Cathryn Middlebrook, Chief Appellate Public Defender, Kathryn J. Lockwood, Assistant
Public Defender, St. Paul, Minnesota (for appellant)

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Michael O. Freeman, Hennepin County Attorney, Elizabeth Johnston, Assistant County
Attorney, Minneapolis, Minnesota (for respondent)

        Considered and decided by Bjorkman, Presiding Judge; Halbrooks, Judge; and

Kalitowski, Judge.\*

---

\*  Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to
Minn. Const. art. VI, § 10.

**HALBROOKS**, Judge

Appellant challenges the postconviction court's denial of his petition to withdraw his guilty plea on the ground that he was unaware that he would be subject to mandatory predatory-offender registration. Because predatory-offender registration is a collateral, not a direct, consequence of a guilty plea, we affirm.

## FACTS

Appellant Theodore Lee Wicken assaulted his ex-girlfriend at her apartment on March 13, 2013. Wicken had previously been adjudicated delinquent of third-degree criminal-sexual-conduct offense in 1990 and was discharged from probation for that offense in 1992. He has been convicted of a number of other offenses since 1990, including first-degree burglary in 2002, misdemeanor domestic assaults in 2001 and 2004, and felony domestic assault in 2006. Because less than ten years have elapsed since Wicken was convicted or adjudicated delinquent of qualifying domestic violence-related offenses, the state charged him with felony domestic assault for the 2013 offense.

Wicken waived his right to a jury trial and pleaded guilty to attempted domestic assault in exchange for a 13.5-month prison sentence. He was sentenced in August 2013 to 13.5 months with credit for 108 days served. It is undisputed that nothing was mentioned at Wicken's guilty-plea hearing or sentencing hearing that he would be required to register as a predatory offender based on his 1990 criminal-sexual-conduct adjudication if he pleaded guilty—neither his attorney, the prosecutor, or the district court

2

advised Wicken of the mandatory registration. Wicken pleaded guilty and was sentenced without knowing that he would need to register upon his release from prison.

Wicken was first advised of the requirement to register when he was released from prison. Based on this information, Wicken moved to withdraw his guilty plea for the felony attempted domestic assault based on the basis of ineffective assistance of counsel. The postconviction court denied his motion. This appeal follows.

## D E C I S I O N

Wicken argues that the postconviction court erred by denying his postconviction motion to withdraw his guilty plea because he was not aware of the mandatory predatory-registration requirement when he pleaded guilty. We review de novo a claim of ineffective assistance of counsel. *Opsahl v. State*, 677 N.W.2d 414, 420 (Minn. 2004). "A defendant does not have an absolute right to withdraw a guilty plea." *Sames v. State*, 805 N.W.2d 565, 567 (Minn. App. 2011). But the district court "must allow a defendant to withdraw a guilty plea . . . [if] necessary to correct a manifest injustice." Minn. R. Crim. P. 15.05, subd. 1. "A manifest injustice exists if a guilty plea is constitutionally invalid because it is not accurate, voluntary, and intelligent." *Sames*, 805 N.W.2d at 567.

"When an accused is represented by counsel, the voluntariness of the plea depends on whether counsel's advice was within the range of competence demanded of attorneys in criminal cases." *State v. Ecker*, 524 N.W.2d 712, 718 (Minn. 1994) (quotations omitted). "The intelligence requirement ensures that a defendant understands the charges against him, the rights he is waiving, and the consequences of his plea." *State v. Raleigh*,

3

778 N.W.2d 90, 96 (Minn. 2010). "'Consequences' refers to a plea's direct consequences, namely the maximum sentence and fine." *Id.*

Wicken argues that predatory-offender registration "is a consequence that flows definitively, immediately, and automatically from the plea" and is more akin to a direct consequence than a collateral consequence. Thus, he maintains that his attorney's failure to advise him of this consequence fell below the constitutional threshold of reasonableness required for effective assistance of counsel.

Registration is automatic and mandatory for an offender who commits a qualifying offense or has a previous conviction or juvenile adjudication listed as a qualifying offense. *See* Minn. Stat. § 243.167 (2012). Wicken was not required to register after his offense in 1990 because Minnesota did not enact this predatory-offender registration statute until 2000. But Wicken's 2013 offense triggered registration because it was a qualifying crime against a person and a felony with a presumptive prison sentence. It is undisputed that he was not told about this consequence.

The postconviction court denied Wicken's motion to withdraw his guilty plea on the ground that the requirement of predator-offender registration is a collateral consequence of a guilty plea. It based its decision on *State v. Kaiser*, which held that "[t]he duty to register as a predatory offender is a regulatory rather than punitive consequence and therefore is a collateral consequence of appellant's guilty plea." 641 N.W.2d 900, 907 (Minn. 2002). The postconviction court concluded that Wicken is foreclosed from relief under *Kaiser* because the supreme court held that "definite, immediate and automatic consequences must be punitive and a part of a defendant's

4

sentence in order to constitute direct consequences for purposes of establishing manifest injustice to withdraw a guilty plea," *id.*, and the predatory-offender registration statute is "civil and regulatory, and not penal." *Id.* at 905 (citing *Boutin v. LaFleur*, 591 N.W.2d 711, 717 (Minn. 1999) (finding that mandatory predatory-offender registration is regulatory because such a statute does "not require an affirmative disability or restraint," is not "regarded as punishment," and "does not promote the traditional aims of punishment since it does not involve confinement and is not intended to exact retribution"). We agree. Because predatory-offender registration is civil and regulatory in nature, we conclude that it is a collateral, not a direct, consequence of a guilty plea.

Wicken argues that the Supreme Court's decision in *Padilla v. Kentucky* shifts the analytical framework from one analyzing direct versus collateral consequences to whether the consequence is "intimately related to the criminal process." 559 U.S. 356, 365, 130 S. Ct. 1473, 1481 (2010). In *Padilla*, the Supreme Court determined that Padilla's counsel was ineffective because Padilla was not told that his guilty plea would likely result in his deportation. *Id.* at 367, 130 S. Ct. at 1482. But *Padilla* did not extend its reasoning to collateral consequences generally, and it does not preclude other courts from deciding that the direct-versus-collateral-consequences framework is more appropriate to circumstances outside of the context of deportation. *See Sames*, 805 N.W.2d at 569-70 (declining to extend the reasoning in *Padilla* to collateral restrictions on a defendant's right to possess firearms after a guilty plea).

In *Sames*, this court addressed the issue of direct and collateral consequences:

> We are bound to follow the analytical framework of the . . . caselaw, which relies on the distinction between direct consequences and collateral consequences, both for purposes of ensuring that a guilty plea is entered consistent with due process of law and for purposes of the Sixth Amendment right to the effective assistance of counsel.

*Id.* at 568.

Because mandatory predatory-offender registration is a collateral, not a direct, consequence of a guilty plea, the postconviction court did not err by denying Wicken's motion to withdraw his guilty plea given the postconviction court's determination that his attorney's representation did not fall below an objective standard of reasonableness.

**Affirmed.**

6